826 P.2d 971

Art SANCHEZ, Claimant–Appellant,

v.

MOLYCORP, INC., and Unocal, a self-insured employer, Respondents–Appellees.

No. 12808.

Court of Appeals of New Mexico.

Jan. 17, 1992.

Anthony G. Lopez, Taos, for claimant-appellant.

William P. Slattery, Campbell & Black, P.A., Santa Fe, for respondents-appellees.

## OPINION

MINZNER, Judge.

Claimant appeals from the decision of the workers' compensation judge (WCJ) denying his claim for temporary total disability and awarding attorney's fees based on an award for permanent partial disability. Claimant raises the following issues on appeal: (1) whether he was entitled to temporary total disability because Molycorp refused to allow him to return to work until he obtained a full work release; (2) whether certain findings of fact are supported by substantial evidence on the whole record; (3) whether the award of attorney's fees, which equals $28.32 per hour, was an abuse of discretion; and (4) whether the WCJ

erred by terminating Claimant's right to future reasonable medical expenses. Respondents (Employer) concede that the claim for future medical care should have been dismissed without prejudice. Therefore, only the denial of the temporary total disability claim and the amount of attorney's fees are still disputed. We address the first and second issues under one heading. We reverse and remand for a hearing on the issue of temporary total disability. We direct the WCJ on remand to reconsider the amount of attorney's fees awarded and to amend the compensation order previously entered to indicate that the claim for future medical benefits is dismissed without prejudice.

## I.

### BACKGROUND.

Claimant worked as a "mucker/laborer" at Molycorp, a job described as requiring heavy work. On February 14, 1990, he was assigned to break boulders with a twenty-pound sledgehammer. Some time after he began the task, his sledgehammer bounced off a boulder and twisted out of his hands; the handle struck the tip of his right index finger, injuring it.

Claimant was taken to the Questa Health Center where a physician took x-rays and applied a splint. The treating doctor signed an injury report that released Claimant to "light duty" work. Later, the doctor gave deposition testimony in which he stated that by releasing Claimant to light duty, he meant that Claimant could do any work that was not affected by the presence of the splint. He also testified that he believed some of Claimant's responsibilities, specifically using a sledgehammer, would be adversely affected by the splint's presence.

Claimant went back to work that day and was told to finish his shift by sweeping around the offices. The next day, he returned to work with a written statement he had prepared. The statement provided:

To whom it may concern:

I the undersigned was injured on 2/14/90, while performing work assign-

ment on grizzly level. Was taken to Questa Health Center by company safety representative Miguel Sanchez, where I was diagnoised [sic] and treated for a broken right hand index finger (pointer finger). Doctor at Questa Health Center suggested light duty for six weeks. Will attempt to perform job assigned by company under protest. Any further injury to injured finger due to company job assignment or disfigurement of injured finger due to first injury (Molycorp) will be subject to legal action.

Claimant's Exhibit 6.

Claimant was sent to several different foremen that day. He finally was given work driving a vehicle to pick up tools. At the end of the day, he testified that Molycorp's production superintendent, Ron Allum, instructed him not to return to work until he obtained a second medical opinion and a full work release. Employer objected to Claimant's testimony as hearsay. To buttress his claim that Molycorp refused to make light duty work available, Claimant also was prepared to testify that after he returned to work on the day he was injured, a Molycorp official, Dave Shoemaker, stated: "There is nothing wrong with Art. He is stronger with his left arm than most people are with both arms. Send him underground." The WCJ rejected his proffered testimony, ruling that both statements were hearsay and inadmissible. Employer did not call either Allum or Shoemaker to testify.

Claimant saw an orthopedic surgeon, Dr. Herbert Rachelson, on February 27. Dr. Rachelson diagnosed a small fracture at the tip of his finger, with an accompanying mallet deformity. He did not release Claimant to full duties until May 9. He considered Claimant "disabled" because Claimant needed full use of his right hand to perform his duties, with which the injury interfered.

Claimant did not work at the mine again until May 30, 1990. He delivered Dr. Rachelson's full release to Molycorp on May 9 but was required to undergo a physical and obtain a release from the company physician before he could return to work.

Claimant filed his claim against Molycorp on April 3, 1990. He sought temporary total disability benefits from February 15, 1990, until he returned to work, compensation for the permanent partial loss of use of his finger, past and future medical treatment, and mileage reimbursement. Employer contended that Claimant was not injured in the course and scope of his employment and that he was not entitled to any compensation, either for the partial loss of the use of his finger or for temporary total disability. Employer claimed that Claimant actually injured his finger prior to February 14 in a nonwork-related incident, and if the accident did occur within the course and scope of his employment, he was not entitled to any temporary total disability benefits because he failed to perform light duty work which was available.

The WCJ concluded that Claimant's injury was work-related and awarded him compensation for a four-percent permanent partial loss of use of his finger, plus past medical expenses and attorney's fees. The WCJ found that Claimant was released to work on February 14 and offered light duty "immediately" after Molycorp learned of the injury. The WCJ also found that Claimant told Molycorp that it would be liable for any damages to his finger while working light duty and that Molycorp advised Claimant "to get a second opinion as to whether [he] could return to work on either a light duty or full duty basis." Finally, she found that he did not make an appointment with Dr. Rachelson for two weeks and failed to inquire about the availability of light duty or full duty work until May 20.

She concluded that: "Claimant was able to perform his job duties either full duty or light duty from February 14, 1990, until May 30, 1990, and was therefore, not entitled to temporary total disability benefits pursuant to Section 52–1–25, N.M.S.A. (1978) (1987 repl. [sic] Pamp.)." Conclusion of Law 5. The WCJ disallowed his claim for temporary total disability from February 15, 1990 to May 30, 1990. There was evidence that Claimant's attorney had spent 60.2 hours in preparation, an amount of time that Employer's attorney had admitted was reasonable. The WCJ awarded $1,705.00 in attorney's fees.

## II.

## DENIAL OF THE TEMPORARY TOTAL DISABILITY CLAIM.

To establish that he was temporarily totally disabled, Claimant was required to prove that he was completely unable to perform the tasks comprising the work he did at the time he was injured, and that he was unable to perform any work for which he was able, based upon his age, education, and experience. *Amos v. Gilbert W. Corp.*, 103 N.M. 631, 635, 711 P.2d 908, 912 (Ct.App.1985). Once he met his burden by presenting proof establishing his disability, however, "the burden of coming forward with the evidence [shifts] to the employer to demonstrate the [claimant's] employability ... for a particular job for which he is reasonably fitted." *Id.* (citing *Brown v. Safeway Stores, Inc.*, 82 N.M. 424, 483 P.2d 305 (Ct.App.1970)).

Claimant argues that the WCJ denied him benefits for temporary total disability on two grounds, neither of which was sufficient. First, he argues that the WCJ apparently found he was released to full duty, and there was insufficient evidence to support that determination. Second, he argues that the WCJ apparently found light duty was offered, but in fact the evidence showed Molycorp refused to allow him to return to light duty work, even though he was physically capable during this period, and required him to obtain a full duty release from a physician. While he concedes that light duty work was available and that he was capable of performing it, he argues that there was insufficient evidence in the record as a whole to support a finding that Molycorp would have allowed him to work light duty. He contends that the availability of light duty work and his capacity to perform it cannot preclude his receipt of benefits for temporary total disability if there is sufficient evidence to support a finding that he was only capable of light duty and Molycorp refused to assign it to him.

Employer argues that Claimant offered only inadmissible hearsay to prove light duty work was not available to him. Employer also argues that the written statement brought to work the day after the accident was evidence that he was unwilling to do light work. It contends that the actual issue raised on appeal is whether there is substantial evidence to support the WCJ's denial of benefits for temporary total disability.

We agree with Employer that the threshold question is whether there is sufficient evidence to support the findings underlying the WCJ's denial of benefits. However, we agree with Claimant that if those findings are not supported by substantial evidence, then the remaining question is one of law. That question is whether the unchallenged findings support the conclusion that "Claimant was able to perform his job duties either full duty or light duty from February 14, 1990, until May 30, 1990, and was therefore, not entitled to temporary total disability benefits[.]" We think they do not.

If there is sufficient evidence to support the WCJ's finding that Claimant was capable of returning to full duty on February 14, then it would not have been inappropriate for Molycorp to refuse to allow Claimant to work light duty on that day. Under those circumstances, even if Molycorp refused to allow Claimant to work without a full release, we would affirm the compensation order on the basis that any error raised on appeal was harmless.

If, however, the evidence shows that Claimant was not capable of other than light duty, Claimant met his burden under *Amos* of coming forward with evidence of the availability of light duty. If Molycorp refused to assign Claimant light duty when that was all he was capable of doing, Employer did not carry its burden of production under *Amos*.

■ We must review the entire record to determine whether the WCJ's findings of fact are supported by substantial evidence. *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 767 P.2d 363 (Ct. App.1988). The WCJ's findings will not be

disturbed if they are supported by substantial evidence, *id.*, and they are to be liberally construed to support the judgment. *H.T. Coker Constr. Co. v. Whitfield Transp., Inc.*, 85 N.M. 802, 518 P.2d 782 (Ct.App.1974). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support the conclusion. *Tapia v. Panhandle Steel Erectors Co.*, 78 N.M. 86, 428 P.2d 625 (1967).

■ We agree with Claimant that Conclusion No. 5 indicates "disability benefits were denied because the Hearing Officer concluded that Claimant was able to perform his full duties during this period of time." We also agree with Claimant that there is not substantial evidence in the record as a whole to support a finding that he was able to return to full duty assignments. The medical evidence only supports a determination that Claimant could have returned to light duty work. Both physicians so testified. Consequently, we cannot affirm the denial of benefits on the ground Claimant was capable of full duty.

We also agree with Claimant that there is not substantial evidence in the record as a whole to support a conclusion that on or about February 14 Claimant was told to obtain a second medical opinion on his ability to return to light duty or full duty work. Employer did not call Allum to testify, and Claimant testified that he was required to obtain a full release. Consequently, there is no evidence that light duty was available to Claimant on terms with which he was able to comply.

■ We agree with Employer that if Claimant refused to accept duties he was capable of performing, he was not entitled to benefits for temporary total disability, but no finding was made that Claimant was unwilling to do light work. Thus, we do not address the inference Employer argues the WCJ might have drawn from the written statement. As we understand the written statement Claimant prepared, he indicated only that if he was assigned work other than light duty, he would perform the assigned job under protest and hold Molycorp liable for further injury. We are

**380**

not prepared to say that this statement establishes as a matter of law that Claimant was unwilling to perform light duty of which he was capable.

The WCJ may have believed that Claimant was not entitled to benefits for temporary total disability when he failed to inquire about the availability of light duty until May. Her findings do not make that belief explicit, however, and under *Amos* we do not believe Claimant's lack of inquiry precludes his right to recover benefits for temporary total disability. Thus, we need not address Claimant's argument that there is insufficient evidence to support the finding regarding lack of inquiry.

■ We conclude that the findings made in support of the determination to deny benefits for temporary total disability are not supported by substantial evidence in the record as a whole and that the remaining findings do not permit us to conclude that the WCJ rejected Claimant's evidence in support of his claim as not credible. Further, we are persuaded that relevant evidence was excluded. Had all of the evidence Claimant offered been admitted and found credible, the WCJ should have concluded that Claimant made a prima facie case of entitlement to benefits for temporary total disability and required Employer to produce evidence that light duty work was offered Claimant without requiring a full release.

Claimant was prepared to offer testimony that would tend to support his contention that Molycorp did not intend to honor his physicians' restrictions on his ability to perform heavy tasks. He was also prepared to testify regarding a specific directive given to him by Molycorp, which was not to return to work until he had a second opinion and a full release from a physician. This testimony was relevant in determining whether Claimant had refused to work light duty or been told not to return to work unless he obtained a full release.

■ We agree with Claimant that the testimony was not offered for the truth of the out-of-court statements, but rather to prove that they were made. Under these circumstances, the out-of-court statements were not hearsay. *See Jim v. Budd,* 107 N.M. 489, 491–92, 760 P.2d 782, 784–85 (Ct.App.1987). If, on remand, Employer offers evidence that Allum and Shoemaker did not make the statements Claimant attributed to them, Claimant's testimony would be admissible as proof of prior inconsistent statements. *See* SCRA 1986, 11–801(D)(1)(a). Finally, even if Claimant's testimony contained hearsay, the record indicates it could have been admitted as proof of admissions made by agents or servants of a party-opponent made in the course and scope of employment. *See* R. 11–801(D)(2)(d); *Segura v. Molycorp, Inc.,* 97 N.M. 13, 18, 636 P.2d 284, 289 (1981) (trial court properly allowed employee to testify about statements made by employer's agent; statements were admissions by an agent of a party-opponent and thus *not* hearsay); 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 801(d)(2)[01], at 801–236 (1991) (rule reflects "common sense view that statements of a principal actor should generally be received rather than excluded from evidentiary consideration").

■ We remand for a hearing to allow Claimant an opportunity to introduce statements made by Molycorp's agents concerning light duty work and the terms on which it was available. Molycorp will then have an opportunity to respond to the testimony Claimant offered. Thereafter, the WCJ will be in a position to determine whether Claimant should be awarded benefits for temporary total disability.

### III.

### ATTORNEY'S FEES.

■ The issue of adequate attorney's fees in this case is a difficult one. At first glance, one might think that an award of fees equal to 179 percent of Claimant's compensation would be more than adequate to compensate the attorney. However, it is inappropriate to rely on the percentage of recovery method to determine whether a particular award is adequate. *Sanchez v. Siemens Transmission Sys.,* 112 N.M. 533,

817 P.2d 726, 728 (1991) (quoting *Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 338, 695 P.2d 483, 488 (1985)). The facts of this case illustrate why the percentage of recovery approach is inadequate. Here the injury was relatively slight, and the award reflected the nature of the injury. Nevertheless, in spite of the relatively small award of benefits, it is clear that other relevant factors would support a much greater award of attorney's fees. The nature of the injury, whether it was work-related, and the extent and duration of Claimant's disability were all hotly disputed issues. There was evidence that the attorney's normal hourly fee was $125 per hour and that the fee range for work of this kind in Taos County was $90 to $125 per hour. It is undisputed that the time spent was reasonable. From the record, then, it appears that the attorney's fees awarded, which equal only about $28 per hour, were inadequate.

On remand, the WCJ is directed to reconsider the award. She may consider the effort expended on this appeal coupled with the new trial, along with all the other relevant factors, to determine an adequate award. *Id.* 112 N.M. at 535–36, 817 P.2d at 728–29; *see also Fuyat v. Los Alamos Nat'l Lab.*, 112 N.M. 102, 108, 811 P.2d 1313, 1319 (Ct.App.1991) (the percentage of the award is not singularly determinative; court considered the case's medical complexity, the fact that all issues were hotly contested, the present value of the award, the hours expended by the attorney and his usual hourly fee, and the employer's failure to make any written settlement offer to uphold the award).

IV.

CONCLUSION.

The compensation order is reversed, and the cause is remanded for a hearing on Claimant's claim for temporary total disability and attorney fees and for entry of an amended compensation order that reflects findings and conclusions consistent with this court's opinion made after the hearing on remand. The amended compensation order shall indicate that Claimant's claim for future medical expenses is dismissed without prejudice.

IT IS SO ORDERED.

DONNELLY and APODACA, JJ., concur.